| | |
|---|---|
| 1 | THE O'MARA LAW FIRM, P.C. |
| | David C. O'Mara, Esq (SBN 08599) |
| 2 | 311 E. Liberty St. |
| | Reno, NV 89501 |
| 3 | Telephone: (775)323.1321 |
| | Facsimile: (775) 323.4082 |
| 4 | E-mail: david@omaralaw.net |

1  THE O'MARA LAW FIRM, P.C.
   David C. O'Mara, Esq (SBN 08599)
2  311 E. Liberty St.
   Reno, NV 89501
3  Telephone: (775)323.1321
   Facsimile: (775) 323.4082
4  E-mail: david@omaralaw.net

5  GLANCY PRONGAY & MURRAY LLP
   Lionel Z. Glancy (SBN 134180)
6  Marc L. Godino (SBN 182689)
   Danielle L. Manning (SBN 313272)
7  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
8  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
9  E-mail: info@glancylaw.com

10 GREENSTONE LAW APC
   Mark S. Greenstone (SBN 199606)
11 1925 Century Park East, Suite 2100
   Los Angeles, California 90067
12 Telephone: (310) 201-9156
   Facsimile: (310) 201-9160
13 E-mail: mgreenstone@greenstonelaw.com

14 *Attorneys for Plaintiff Jessica DeMesa*
   *(Other counsel listed on Signature Page)*

15

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JESSICA DEMESA, as an individual and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS-ACTION COMPLAINT FOR:** |
| v. | Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 |
| TREASURE ISLAND, LLC, | |
| Defendant | **DEMAND FOR JURY TRIAL** |

421896.1 TREASUREISLANDTCPA

CLASS-ACTION COMPL.

## INTRODUCTION

1. Plaintiff Jessica DeMesa brings this class action on behalf of herself, individually, and all others similarly situated against Defendant Treasure Island, LLC ("TI").

2. As alleged below, TI has violated the TCPA through its unauthorized contact of consumers on the consumers' respective cellular telephones using a virtual concierge platform known as "Ivy." Specifically, TI has violated the TCPA by sending consumers unsolicited text messages for marketing and advertising purposes using Ivy, invading the consumers' right to privacy.

3. Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and Class Members are entitled to, *inter alia*, statutory damages and injunctive relief for TI's violations.

## PARTIES

**Plaintiff Jessica DeMesa**

4. Plaintiff is a resident of the County of Los Angeles, in the State of California. She is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

**Defendant**

5. Plaintiff is informed and believes, and based thereon alleges, that TI is a Nevada company with its principal place of business located at 3300 Las Vegas Boulevard South, Las Vegas, Nevada 89106. TI is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

## JURISDICTION

6. This is a class action.

7. This court has federal question jurisdiction over this action under 28 U.S.C. §1331 because Plaintiff's claim arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 under Federal law. Furthermore, this Court has personal jurisdiction over Defendant because, as alleged below, Defendant is registered to conduct business Nevada, has sufficient minimum contacts with Nevada, and/or otherwise intentionally avails itself of the markets within Nevada.

## VENUE

8. Venue is proper in this District because Defendant resides in this district within the

meaning of 28 U.S.C. § 1391 and a substantial part of the acts and omissions alleged herein took place in this District, as Plaintiff received the text message from Treasure Island in this District.

## FACTUAL ALLEGATIONS

### Treasure Island's Roll Out of the Ivy-Virtuay Concierge

9. TI owns and operates the Treasure Island Hotel and Casino in Las Vegas, Nevada.[1]

10. Plaintiff is informed and believes, and based thereon alleges, that, in or before 2016, TI began working with a California-based company called GoMoment to roll out a guest-engagement platform known as the Ivy virtual concierge at the Treasure Island Hotel and Casino. Similar to Siri, Alexa, and Google Assistant, Ivy is a form of artificial intelligence that is used to power a messaging service designed to interact with hotel guests. As one writer puts it, "[w]hile Siri inhabits an iPhone, Alexa her Echo and Google Assistant hangs out in the office and home, Ivy is a more itinerant sort: She's the world's largest travel chatbot, working in hotels across the country."[2] GoMoment explains on its website homepage that the Ivy product has been "[d]esigned in concert with hotel owners and operators," and has "ushered in the next generation of guest engagement and online reputation management."[3] According to GoMoment, Ivy is employed by some of the world's largest hotel brands, including Hilton, Wyndham, Doubletree, and others.[4]

11. Plaintiff is informed and believes, and based thereon alleges, that TI and GoMoment have had, and continue to have, a close business relationship.

12. Plaintiff is informed and believes, and based thereon alleges, that the Ivy platform through which the messages at issue were sent was developed, and is maintained, by GoMoment in California. Plaintiff is further informed and believes, and based thereon alleges, that, at all relevant times, TI was aware of this due to its close working relationship with GoMoment.

13. A prime motivation for the implementation of Ivy was and remains boosting hotel

---

[1] TI, "Privacy Policy & GDPR Notice," http://www.treasureisland.com/privacy (last modified May 24, 2018).

[2] Andy Vasoyan, "Hey Ivy, Where's the Pool?," Playa Vista Direct, https://playavistadirect.com/hey-ivy-wheres-pool/ (Feb. 24, 2018).

[3] GoMoment, http://www.gomoment.com/ (last visited July 18, 2018).

[4] Id.

revenue by increasing the purchase of hotel-related services and products, such as restaurants, shows, and the like. GoMoment's homepage states: "Drive more profitable revenue on autopilot with customized incentives. Keep your guests coming back with personalized service."[5] GoMoment has explained:

**How to increase hotel revenue**

> Hotels and resorts are always looking for a way to increase revenue and improve the guest experience. But what is the best way to do so? A combination of automation and the human touch.
>
> What if you could automatically offer guests a reservation at the on-site restaurant, in a non-intrusive way? What if you could answer your guests [*sic*] questions instantly without requiring them to call or walk to the front desk? What if that answer did not require any time or focus from your staff?
>
> Well, that's exactly what Ivy does, Maximizing [*sic*] hotel revenue, while improving guest review scores at the same time.
>
> Ivy is the only guest messaging service powered by artificial intelligence (built in partnership with IBM Watson). She is empowering hotels and resorts to deliver a world-class experience while generating additional revenue, all with no app download required.[6]

14.   Plaintiff is informed and believes, and based thereon alleges, that Ivy was rolled out at the Treasure Island Hotel and Casino in about 2016, as explained in 2016 by IBM, whose "Watson" technology powers Ivy:

> Treasure Island Las Vegas, the 27th largest casino in the world with nearly 3,000 rooms, is using Watson to deliver instant customer service via SMS messages. The hotel has integrated Watson developer partner Go Moment's mobile guest engagement application, Ivy. Ivy uses Watson's Natural Language Classifier API to help quickly

---

[5] GoMoment, http://www.gomoment.com/ (last visited July 18, 2018).

[6] GoMoment, https://medium.com/@ivygomoment/how-to-increase-hotel-revenue-b7702235f77b (last visited July 18, 2018) (emphasis in original).

address guest questions, such as new towels requests or hotel restaurant recommendations.[7]

15. Plaintiff is informed and believes, and based thereon alleges, that TI directed the roll-out of Ivy and was directly involved in determining message content and tone, as well as to whom and when messages would be sent.

**Plaintiff's Experience**

16. On or about April 27, 2018, Plaintiff checked into the Treasure Island Hotel and Casino. Prior to check-in, during the online reservation process through TI's website, Plaintiff was asked for, and provided, her cellular-telephone number, which has a California prefix. Also during the online reservation process through TI's website, she was asked for, and provided, her residence address (which was also in California). Approximately one hour after check-in, she received the following text message from TI:

> Hi! I'm Ivy, your personal TEXT Help at Treasure Island. Txt me for things to do or reply BUFFET23 or LUCKY anytime. On a scale of 1-5 (5=best), how is your check in and room experience? Terms:

Plaintiff did not respond to this text message.

17. Following the word "Terms" in the text message that Plaintiff received was a link to a webpage. Clicking on the link opens up a webpage that promotes the commercial availability and quality of Ivy, stating, *inter alia*:

> **Ivy will help you during your stay!**
>
> **Want to make a request?** Close this page, go back to the text message you received, and just reply. You can ask for towels, get the wifi passcode, or even ask for local recommendations. If Ivy doesn't know the answer, she will connect you with the front desk. Ivy is available anywhere, anytime during your stay! So please use her!
>
> **Want to Opt-Out?** If you do not want to text with Ivy, go back to the text message your

---

[7] Trips Reddy, "Watson Developers: The Driving Force Transforming Industries and Society," https://www.ibm.com/blogs/watson/2016/11/watson-developers-driving-force-transforming-industries-society/ (Nov. 9, 2016).

received and reply STOP.

**How Does Ivy Work?**  Ivy works simply by text message.  To get started, close this page and reply to the text message you received.

**What Can Ivy Help Me With?**  You can ask for towels, get the wifi passcode, or even ask for local recommendations.  If Ivy doesn't know the answer, she will connect you with hotel staff.  It's simple.  Go back to the text message your received and reply now to make your first request.

**Why Ivy?**  Created by busy travelers, Ivy exists to serve your needs while you're on the go.  Hotel staff can't always attend to your every need right away, so Ivy was created to be your virtual assistant during your stay.  We hope you enjoy Ivy and your travels!  Ivy was developed by Go Moment, and is available to hotels worldwide.  Sales & media inquiries can be directed to the Contact Us link below.

**Issues or Opting Out:**  Reply "STOP" or "UNSUBSCRIBE" at any time to permanently opt out of Ivy service.  Ivy strives to be helpful in all her interactions, and takes abuse seriously.  If Ivy was anything but helpful to you, please let us know using the Contact Us link below.[8]

18. Plaintiff is informed and believes, and based thereon alleges, that other guests of the Treasure Island Hotel and Casino are sent messages by TI upon check-in that are the same as, or substantially similar to, the message that Plaintiff received.  Plaintiff is further informed and believes, and based thereon alleges, that these messages were sent for the purpose of both advertising the availability of the Ivy product, on the one hand, and encouraging the patronage of hotel-related products and services, on the other hand.

19. At no time prior to receiving the text message referenced in paragraph 16 had Plaintiff ever signed a document, whether in paper or electronic form, reciting that TI was authorized to send text messages to her using an automatic telephone dialing system for telemarketing or advertising purposes.  Similarly, at no time prior to receiving the text message referenced in paragraph 16 had Plaintiff ever

---

[8] GoMoment, http://info.gomoment.com/ivy/ (last visited July 24, 2018).

signed a document, whether in paper or electronic form, reciting that she was not required to provide consent as a condition of purchasing any goods or services.

20. It is apparent from the context of the text message above that the message was not sent with an emergency purpose, but instead to advertise the availability of the Ivy product and to promote services, activities, and events provided by TI.

21. At all times relevant to this action, Plaintiff's cellular-telephone number was linked to a subscription plan under which she was charged each month for cellular-telephone and data services.

22. Plaintiff is informed and believes, and based thereon alleges, that her cellular-telephone number, along with numerous other telephone numbers, was entered into the Ivy platform or into a database that the Ivy platform is capable of accessing to mass-dial and/or automatically dial numbers, and that TI sent the message referenced in paragraph 16 using the Ivy platform.

23. Plaintiff is informed and believes, and based thereon alleges, that thousands of similar messages were and continue to be sent *en masse* to the cellular telephones of the guests at the Treasure Island Hotel and Casino. Plaintiff is further informed and believes, and based thereon alleges, that all of these text messages were sent using the equipment or software referenced in paragraph 22 *supra*. In addition, Plaintiff is informed and believes, and based thereon alleges, that, at no time prior to receiving these text messages had any guest ever signed a document, whether in paper or electronic form, disclosing that the guests were authorizing the delivery of telemarketing or advertising messages by way of an automatic telephone dialing system, or disclosing that the guests were not required to provide consent as a condition of purchasing any goods or services.

**CLASS-ACTION ALLEGATIONS**

24. Plaintiff seeks to represent the following Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3):

> All persons who, during the four years prior to the filing of the Complaint in this action through the date of class certification, received one or more text messages from the Ivy concierge sent by TI.

25. Plaintiff reserves the right to amend or modify the proposed Class, or to propose subclasses or limitations to particular issues, in response to facts later ascertained.

26. **Numerosity:** The identities of Class Members may be ascertained from TI's own business and marketing records, as well as the records of TI's telephone provider(s). Joinder of all Class Members would be impracticable due to the sizeable number of such Members and their likely lack of resources to initiate individual claims. Plaintiff estimates that thousands of text messages were sent to well-over the forty individuals required for numerosity purposes. Also, as explained below, the amount that is owed to any given Class Member under the TCPA is relatively small, making it impractical for them to bring their own individual suits.

27. **Typicality**: Plaintiff's claims are typical of those of Class Members because she received a text message from Ivy; she never provided prior express written consent to receive the text message; and the text message was sent to her cellular telephone for an advertising and/or marketing purpose using the same equipment used to send text messages to all Class Members.

28. **Commonality**: There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual Class Members. These common questions include, without limitation:

    a) whether the text messages constitute telemarketing or advertising within the meaning of the TCPA and its regulations;

    b) whether the equipment used to send the text messages constitutes an automatic telephone dialing system within the meaning of the TCPA and its regulations;

    c) whether prior express written consent was required under the TCPA and its regulations before sending any of the text messages; and,

    d) whether the outright failure to secure any prior express written consent constitutes willful and knowing behavior within the meaning of the TCPA and its regulations.

29. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class. She is not aware of any conflicts that she has with Class Members, and she plans on pursuing the litigation vigorously. She also has the same interests as those of the Class, and she has retained counsel who are competent and experienced in class-action litigation. In addition, she has been actively involved in the litigation, she will continue to participate and be available for the duration of the litigation, and she understands the duties that he holds to the Class.

30. **Predominance and Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Again, the individual joinder of all Class Members is impracticable because of the relatively small recovery amounts at stake and the relative lack of resources available for individual Class Members vis-à-vis the large corporate Defendant. Additionally, the judicial system would be burdened with multiple trials of the same issues, and the potential for inconsistent or contradictory judgments would increase. The common questions detailed above, in fact, predominate in this action, as Class Members' claims arise out of the same course of conduct to which Plaintiff was herself subject. A class action therefore would conserve the resources of the parties and the Court while protecting the rights of Class Members. TI's conduct as described above is unlawful, continuing, and capable of repetition, and it will continue unless restrained and enjoined by the Court. Moreover, it is a matter of public interest to obtain definitive answers to the legality of TI's actions in a single case.

## FIRST CAUSE OF ACTION

Violation of the TCPA

47 U.S.C. § 227

31. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

32. The United States Congress enacted the TCPA in order to balance individual privacy rights with legitimate telemarketing practices. In enacting this statute, Congress found:

(1) The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.

. . . .

(10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

(11) Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate

burden on the consumer.

(12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

TCPA of 1991, PL 102–243, December 20, 1991, 105 Stat 2394.

33. The TCPA specifically prohibits automated calls or messages to consumers' cellular-telephone numbers without first obtaining the express consent or permission of the consumers:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States[,] (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1). A text message is a "call" within the meaning of the TCPA. *E.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

34. Under the relevant regulation, effective October 16, 2013, "prior express consent" as used in subsection (b)(1)(A)(iii) of the TCPA means "prior express *written* consent" for all telemarketing or advertising messages. 47 C.F.R. § 64.1200(a)(2) (emphasis supplied). Such consent must be signed by the consumer; disclose that the consumer authorizes the entity on whose behalf the message is sent to deliver, or cause to be delivered, telemarketing or advertising messages by way of an automatic telephone dialing system; and disclose that the consumer is not required to provide consent as a condition of purchasing any goods or services. *Id*. § 64.1200(f)(8). As alleged above, neither Plaintiff nor any Class Member ever signed, whether in paper or electronic form, a document containing these disclosures.

35. The foregoing acts and omissions of Defendant constitute a direct violation of the TCPA. Defendant was and is aware of the TCPA and its requirements, and, on information and belief, intentionally violated the law in an effort to maximize profits. Defendant's violations therefore were willful.

36.     The TCPA establishes a private right of action for sending unauthorized messages to consumers:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions.  If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

37.     Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff and Class Members are entitled to an award of $500 in statutory damages for each and every text message that they received.  Moreover, because Defendant willfully and knowingly violated the TCPA as alleged above, Plaintiff and Class Members are entitled to treble damages.  Finally, pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff and Class Members are entitled to injunctive relief.

## RELIEF REQUESTED

38.     Plaintiff, on behalf of himself and all others similarly situated request the Court to enter judgment against Defendant , and issue an order providing the following relief:

a. an order certifying the Classes under section Federal Rule of Civil Procedure 26;
b. judgment in favor of Plaintiff and Class Members for the period of time commencing four years prior to the filing of the Complaint in this action, for statutory treble damages against Defendant, as well as for injunctive relief;
c. an award of pre-judgment and post-judgment interest, to the extent allowable by law;
d. an award of attorney's fees and costs of suit, to the extent allowable by law; and
e. such further relief as the Court deems fit and proper.

## DEMAND FOR JURY TRIAL

39. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: October 17, 2018

THE O'MARA LAW FIRM, P.C.

By: /s/ David C. O'Mara
David C. O'Mara, Esq (SBN 08599)
311 E. Liberty St.
Reno, NV 89501
Telephone: (775)323.1321
Facsimile: (775) 323.4082
E-mail: david@omaralaw.net

Lionel Z. Glancy (SBN 134180)
Marc L. Godino (SBN 182689)
Danielle L. Manning (SBN 313272)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

GREENSTONE LAW APC
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
E-mail: mgreenstone@greenstonelaw.com

JAURIGUE LAW GROUP
Michael J. Jaurigue (SBN 208123)
michael@jlglawyers.com
Ryan A. Stubbe (SBN 289074)
ryan@jlglawyers.com
300 West Glenoaks Boulevard, Suite 300
Glendale, California 91202
Telephone: (818) 630-7280
Facsimile: (888) 879-1697

*Attorneys for Plaintiff*